IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| DAVID M. ROGERS | ) | |
| and JANICE C. ROGERS, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 150511C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

Magistrate Dan Robinson wrote and signed the Decision in this matter, entered

August 31, 2016. This Final Decision incorporates the court's Decision without change. The

court did not receive a statement of costs and disbursements within 14 days after its Decision

was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

Plaintiffs appeal Defendant's conference decision letter dated October 13, 2015, for the

2011 tax year. In that letter, Defendant disallowed the 2011 Schedule C losses of $29,401 for

Rogers Mining. A trial was held on May 18, 2016, in the courtroom of the Oregon Tax Court in

Salem, Oregon. Dennis Doyle appeared on behalf of Plaintiffs. David Rogers (Mr. Rogers) and

Janice Rogers (Mrs. Rogers) testified on behalf of Plaintiffs. Janice Tenace (Tenace) appeared

and testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 30 were received without

objection. Defendant's Exhibits A through E were received without objection.

## I. STATEMENT OF FACTS

A.    *The Mines*

According to the uncontroverted testimony, Plaintiffs, who are Oregon residents, own

two mines in California, the Grey Eagle mine and the White Eagle mine. Mr. Rogers inherited

the mines from his father when he passed away sometime in the early or mid-1970s. (*See also* Ptfs' Ex 16.) Mr. Rogers testified to the following.

His father and grandfather each owned the mines dating back to the 1940s, prior to Mr. Roger's acquisition. Through testimony and documentary evidence, Plaintiffs provided some mining history for the mines that dates back to 1947. (Ptfs' Ex 1 at 1-12; *See also* Ptfs' Ex 24.) The Grey Eagle mine produced a reported 10,276.38 tons of talc from 1947 through 1982. (Ptfs' Ex 1 at 1.) Plaintiffs submitted a 1964 United States Geological Survey Bulletin that states that "The Gr[e]y Eagle mine (including the Hilderman) contains the largest reserves in California known to be acceptable as steatite." (Ptfs' Ex 6 at 2.) "[S]teatite means exceptionally pure talc." (Ptfs' Ex 5 at 2.) The talc in the Grey Eagle mine is special because it is microcrystalline, whereas most of the world's talc is macrocrystalline. Microcrystalline talc is not only rare but special because it is used in products like high quality paints applied to Nascar race cars, Rolls Royce, and other high end vehicles because it repels water exceptionally well and absorbs oil, which in combination provide a "really fine distribution." Another big use of talc is in the cosmetic industry, especially in foundation (a facial skin product), and because skin color varies so widely, lots of color has to be added; the brighter the talc, the less color needs to be added. That fact (brightness/purity) makes lighter talc more valuable.

Mr. Rogers testified that due to cave-ins, the majority of the remaining talc in the mine was inaccessible after the late 1960's, and that the remaining accessible talc was mined out before 2011. Plaintiffs' mining operations ceased for a number of years prior to 2011, although he did lease the mine to "Ukumiewicz" from 1978 to 1983.

In 2011 Mr. Rogers tried to access the white talc in a new third level because he had mined out the talc above. He had two choices: running a "drift," which is a horizontal tunnel, or

drilling a vertical shaft. He first tried the drift because it is safer and easier to work in and to remove minerals, but the drift failed due to a lack of air for the compressor and insufficient ventilation. Mr. Rogers then chose his only other option, sinking a 30-foot shaft, which gave him access to more white talc ore. As a result of that work, which took six months, Mr. Rogers gained access to 20,000 tons of "translucent" white talc ore. Mr. Rogers testified that 20,000 tons is the minimum amount needed in the mining industry to attract the larger companies to come out to a mine and evaluate its potential. Mr. Rogers testified that the 20,000 ton amount was verified by a representative from "a big company," but he did not identify the name of that company. Mr. Rogers further testified that existing documents show large quantities of steatite in the mine, but that he did not have current access to those documents.

Plaintiffs submitted a 2015 technical report showing the "main physical and mineralogical characteristics of a crude sample of talc labelled as 'Grey Eagle (White)' from IBIS Mining Company." (Ptfs' Ex 11 at 1-3.) That report states the presence and quality of the talc, but there was no testimony to explain the scientific details. Plaintiffs also submitted a letter from Steven Dunn (Dunn) dated December, 14, 2015, providing an estimate of talc reserves in the mine, based on several visits since he worked there with Mr. Rogers in 1974, and extrapolating from the 1964 geological survey report, which he states "closely represents the current status of the reserves at the Gray [sic] Eagle." (Ptfs' Ex 20.) Dunn has a degree in Mining Engineering. (*Id.*)

Mr. Rogers testified that there was a diminished supply of high grade talc on the market back in 1992, which made reopening the mine worthwhile. In most years, he worked on the mine only in spring and fall because the weather is too hot in summer and because it might snow in the passes in the winter. He also testified that he provided talc test samples to a number of

mining companies at some point after the mine(s) were reopened. According to Mr. Rogers' testimony, one company, Imerys, took three tons of talc for testing in the spring of 2012, two tons of which came from the White Eagle mine and one ton from Grey Eagle. Mr. Rogers testified that they "negotiated a price." Later on cross-examination Mr. Rogers testified that he got paid for a bulk sample he sold to Imerys in 2011. No gross receipts were included on Plaintiffs' 2011 federal Schedule C; only losses. Tenace noted on cross-examination of Mr. Rogers that Plaintiffs have reported "zero income" and losses in excess of $300,000 going back to, she believed, 1989.

At the May 2016 trial, Mr. Rogers testified that he was currently at the point of sending out more and larger samples to various companies.

Plaintiffs introduced into evidence pictures showing work that has been done at both the Grey Eagle and White Eagle mines. Those pictures show the inside of a mine as well as the landscape around the mine including: rails with a cart, an ore pipeline, a water pipeline, water tanks, portals, a powder magazine, a road, and a landing. Photographs also showed equipment including a bulldozer that was purchased in 2012. (Ptfs' Ex 22.)

B.     *Mr. Roger's Mining Experience and Licenses*

Mr. Rogers testified as to having considerable experience in mining. His resume includes 42 years of mining experience. (Def's Ex E-1). According to his testimony, Mr. Rogers began learning about mining from his father in the 1970's. After his father died, Fred Story, a widely recognized mining expert with years of mining experience, mentored Mr. Rogers and a man named Steve Dunn in mining white talc, silver, and tungsten. Mr. Rogers also gained experience working in the mines for Union Carbide. Subsequently, Mr. Rogers did further mining work for Joe Hastings. Mr. Rogers and Joe Hastings also had experience implementing new mining

technology that separated micronized gold from clay – economically and in an environmentally friendly manner.

Mr. Rogers testified as to having the following work and business experiences in areas other than mining. Mr. Rogers attended school in California and earned a degree in respiratory therapy, and became a registered respiratory therapist in 1981 or 1982. He met his wife at that time. Respiratory therapy is, according to Mr. Rogers, helpful in mining. He worked as a registered respiratory therapist at different times in his life, but did not like working with doctors, so he went back to work in mining sometime around 1983. He attended Southern Oregon University and earned a general studies degree in 1986. At one point, Mr. Rogers had what he described as a very successful concrete cutting business. He also has experience buying and selling mining equipment.

C.    *Plaintiffs' Mining Companies and Licenses*

Mr. Rogers testified that he did business under the name Rogers Mining as far back as the 1970s and that Rogers Mining still exists today. Mrs. Rogers also testified that Plaintiffs previously operated as Rogers Mining Company, and continue to do so. According to their testimony, both Plaintiffs worked at the mines at some points.

Mr. Rogers testified that he formed the Oregon LLC, IBIS Mining Company (IBIS), in order to get a surface management surety bond because the bond companies would only bond corporate entities, not individuals. Defendant's representative Tenace testified that IBIS is an active LLC registered with the Oregon Secretary of State. In 2011, IBIS was listed as a two-member LLC. (Def's Ex C at 41.) The listed members were Plaintiffs David Rogers and Janice Rogers. (*Id*.) Mr. Rogers testified that IBIS is "inactive" and that the only revenue IBIS

/ / /

generated was from the sale of talc bulk samples in 2013.   Tenace testified that from her research she did not find any tax returns filed for IBIS.

Plaintiffs introduced evidence of two licenses issued for their mining activities.  The Bureau of Alcohol, Tobacco, Firearms and Explosives issued a Federal Explosives License/Permit to IBIS Mining Company LLC with David Marc Rogers listed as the Responsible Person.  (Ptfs' Ex 14 at 1-3.)  The Office of the Sheriff in Inyo County, California, issued to David M. Rogers an explosives permit.  (Ptfs' Ex 15.)

D.      *Plaintiffs' 2011 Schedule C Form, Receipts and Expenses*

Plaintiffs filed a 2011 federal Schedule C (Schedule C) under the name Rogers Mining reporting no income and total losses of $29,401 (Def's Ex D-8.)  Among the expenses comprising those reported losses were $12,183 for supplies, $3,640 for repairs and maintenance, $4,256 in other expenses, and $5,734 in car and truck expenses.  (*Id.*)  Plaintiffs' reported total wages of $71,740 on line 7 of their 2011 federal Form 1040.  (Def's Ex D-4.)  A 2011 W-2 wages and tax statement indicates that those wages were attributable to Mrs. Rogers' job with Asante Health System in the Medford Oregon.  (Def's Ex D-6.)

Tenace noted during her testimony that many items claimed on Plaintiffs' 2011 Schedule C were not substantiated.  Tenace also expressed concern that over the years, including 2011, expenses were charged to IBIS, a two-member LLC that is not a disregarded entity, but that IBIS did not file, and has not filed, any business tax returns.  Tenace testified that Plaintiffs acknowledge there is technically no entity known as Rogers Mining, but that Plaintiffs filed their 2011 Schedule C using that name, when, in her opinion, a corporate return should have been filed and the expenses reported on a Schedule E.  Tenace testified that, although that was "not really the issue," it was a concern, but that ultimately the expenses claimed on Plaintiffs' 2011

Schedule C were denied due to a lack of substantiation. Tenace also testified that, in the proposed audit report, she explained that the expenses were not substantiated completely.

Mrs. Rogers testified that she provided Defendant with all documents from the credit card companies and bank statements, as well as receipts associated with 90 percent of those expenses. However, Plaintiffs did not submit any of those receipts at their trial here in the Tax Court. Mrs. Rogers also testified that when credit cards were used to purchase mining-related items, the credit cards used were in Plaintiffs' personal names, not IBIS's name. There is no evidence that there were any bank accounts or credit cards in the name of IBIS or Rogers Mining.

Plaintiffs did not introduce into evidence any documents or receipts for their claimed expenses, nor did they produce any evidence showing that those expenses were associated with their mining activity. Defendant introduced into evidence six receipts or other documents obtained from Plaintiffs during the audit. (Def's Exs C-43-C-48.) One of those receipts is from The Berns Company for a water pump sold to Abdul Ayoub. Four other documents were from Brown's Supply to I.B.I.S. (*Id.* at C-44-C-47.) Those documents are a list of charges and payments for unidentified items – referenced only by item number. The sixth document is a receipt from Brown's Supply to IBIS – Dave Rogers for 546 feet of black pipe, a "Victor Torch Kit, and a hose, totaling $1,776.54, including tax. (Def's Ex C-48.) The charge for the pipe was $1,158.23 before taxes. (*Id.*) That purchase was made by Mr. Rogers using Plaintiffs' personal credit card. Plaintiffs did not testify about any of the receipts or other documents Defendant submitted, nor did they identify how Abdul Ayoub was connected to their mining activity.

## II. ANALYSIS

The issue before the court is whether Plaintiffs are entitled to deduct certain expenses associated with mining activities that they claimed on their 2011 federal Schedule C. Plaintiffs

argue that they are at the development stage of mining and as a result, they are entitled to deduct the expenses under IRC section 616(a), which provides in part: "there shall be allowed as a deduction in computing taxable income all expenditures paid or incurred during the taxable year for the development of a mine * * *." Defendant argues that Plaintiffs (1) have not shown a profit motive in their mining activity; (2) are not in the development stage at the mine; (3) have not produced receipts or other documents that substantiates their Schedule C losses; and (4) should have filed a tax return under IBIS Mining Company, LLC.

A.      *Income Tax Guidelines and Burden of Proof*

In analyzing Oregon income tax cases, the court starts with several general guidelines. First, as this court has previously noted, "The Oregon legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) * * * subject only to modifications specified in Oregon law." *Voy v. Dept. of Rev.*, 20 OTR 179, WL 3238967 at *1, (2010), quoting *Ormsby v. Dept. of Rev.*, 18 OTR 146, 151 (2004) (internal quotation marks omitted); ORS 316.007.[1]  Second, allowable deductions from taxable income are a "matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Third, "[i]n all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof.  The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).  "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *."

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

*Reed v. Dept. of Rev. (Reed)*, 310 Or 260, 265, 798 P2d 235 (1990). Because Plaintiffs are the party seeking affirmative relief, they have the burden to show the court – by the more convincing evidence – that the expense deductions they reported on their 2011 Schedule C should be allowed.

B.      *Code Provisions Governing Business Deductions*

Under IRC section 162(a), a deduction is allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" The code and regulations preclude deductions "for expenses incurred in connection with activities which are not engaged in for profit[,]" except as provided in IRC section 183. Treas Reg § 1.183-2(a). Deductions are allowable under IRC section 212 for expenses incurred in connection with activities engaged in for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. IRC § 212; *see also* Treas Reg 1.183-2(a). "[D]eductions are not allowable under section 162 or 212 for activities which are carried on primarily as a sport, hobby, or for recreation." Treas Reg § 1.183-2(a). Finally, if the activity is not engaged in for profit, expenses may be deducted under IRC section 183 only to the extent of any profits. *Gallo v. Dept. of Rev.*, TC-MD 011022F, WL 21675927 at *3 (July 8, 2003).

Plaintiffs were not carrying on a trade or business, so section 162 does not apply. Nor does IRC section 212. Accordingly, Plaintiffs' case is controlled by IRC section 183. IRC section 183 provides in relevant part:

> "(a) General rule. -- In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.

"(b) Deductions allowable. -- In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed—

"(1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and

"(2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)."

There is a nonexhaustive list of nine factors set forth in the regulations to aid in determining whether an activity is engaged in for profit, as provided under IRC section 183(a). Treas Reg 1.183-2(b). "In determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account. No one factor is determinative in making this determination." (*Id*.) "Although a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the objective of making a profit." Treas Reg § 1.183-2(a); *see also Comm'r v. Groetzinger*, 480 US 23, 35, 107 S Ct 980, 94 L Ed 2d 25 (1987).

The nonexhaustive list of factors are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort the taxpayer expends; (4) the expectation that the assets may appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Treas Reg 1.183-2(b).

The evidence is equivocal as to whether Plaintiffs were engaged in their mining activity for profit. Looking at the guidelines in the federal regulations for the nine factors set out above, Plaintiffs clearly meet the second and third factors, do not appear to satisfy the first, sixth, or seventh, and may or may not satisfy the fourth, fifth, or ninth factors. (*Id.*) The court is mindful of the fact that none of the factors is determinative, as explained above, and that the list is not intended to include the only factors considered in making the for-profit determination. (*Id.*)

That said, the court need not determine whether Plaintiffs qualify under IRC section 183 because they have failed to provide any evidence, documentary or testimonial, pertaining to the claimed expenses. Plaintiffs introduced no invoices, receipts, or other written documents demonstrating that they expended monies in 2011 for items associated with mining and neither Plaintiff spoke with any specificity about any of the expenses they reported on their Schedule C. Defendant did submit six exhibits, at least some of which could be related to Plaintiffs' mining activities, but of the six, only one of those documents, a receipt for three items purchased in September 30, 2011, provides the basic relevant information establishing a sale of equipment that could be used in mining. (Def's Ex C-48.) The items in that receipt were sold to IBIS - Dave Rogers. (*Id.*) That receipt at least shows what was bought, to whom it was sold, and when the sale occurred. However, neither Plaintiff presented any testimony regarding that receipt, which leaves the court with no basis by which it can conclude – even under a preponderance of the evidence standard – that the items were more likely than not used in relation to their mining activities in calendar year 2011. Substantiation was a concern addressed by Defendant at the administrative audit level held prior to Plaintiffs' appeal to this court. Plaintiffs therefore were, or should have been, on notice that substantiation of the claimed expenses was an issue to be proved at trial. Accordingly, Plaintiffs have failed to meet their burden of proof under

ORS 305.427. This is a case where the evidence is "inconclusive or unpersuasive," and the taxpayers have therefore failed to meet their burden of proof. *Reed*, 310 Or at 265.

Plaintiffs maintain that they are entitled to the expenses reported on their Schedule C under IRC section 616. However, although that code provision does allow for a deduction for "all expenditures paid or incurred during the taxable year for the development of a mine or other natural deposit," the expenditures must nonetheless be substantiated, and the court has concluded that substantiation is lacking. IRC § 616(a). The same is true of IRC section 617, which provides for a deduction for expenditures "incurred during the taxable year for the purpose of ascertaining the existence, location, extent, or quality of any deposit of ore or other mineral * * *." IRC § 617(a). Accordingly, the parties' dispute over whether Plaintiffs were involved in the development stage of mining, which is covered by IRC section 616, or the exploration stage, which is covered by IRC section 617, is of no consequence.

Finally, there is Defendant's concern raised at trial over Plaintiffs' failure to file an entity ("corporate") return for IBIS. Plaintiffs' two-member LLC is treated under federal and state as a partnership. "For purposes of ORS 320.005 to 320.150 and ORS chapters 305, 306, 307, 308, 308A, 309, 310, 311, 312, 314, 315, 316, 317, 318, 319, 321, 323 and 324, a limited liability company formed under this chapter * * * shall be classified in the same manner as it is classified for federal income tax purposes." ORS 63.810. For tax purposes, an LLC "with at least two members can elect to be classified as either an association (and thus a corporation under § 301.7701–2(b)(2)) or a partnership * * *." Treas. Reg § 301.7701-3(a). "[U]nless the entity elects otherwise, a domestic eligible entity is * * * a partnership if it has two or more members[.]" Treas. Reg. § 301.7701-3(b),(i). Because in 2011 IBIS was a two-member LLC, IBIS is a partnership for federal income tax purposes and for Oregon income tax purposes by

default – unless IBIS elected to be taxed as an association (corporation).  Returning to Defendant's concern over the lack of a partnership or other entity return, the impact of an LLC's failure to file a return is covered by ORS 314.724, which imposes a penalty against a partnership that fails to file an informational partnership return.  The Department of Revenue's remedy is the failure to file penalty, not a denial of deductions.  Defendant did not press the matter, but rather only noted "concern" over the lack of a return filed on behalf of IBIS.

### III.  CONCLUSION

After careful consideration of the evidence and testimony, the court concludes that Plaintiffs have failed to substantiate their 2011 mining-related expenses claimed on their Schedule C, which flowed through to their 2011 Oregon return.  Accordingly, none of the expenses claimed can be allowed.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' Schedule C losses for the 2011 tax year should be, and are hereby, disallowed.  Plaintiffs' appeal is denied.

Dated this \_\_\_ day of September 2016.


POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on September 20, 2016.*